UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **ROGER SHEAK,** | : | **CIVIL ACTION NO.** |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | |
| | : | **TRIAL BY JURY DEMANDED** |
| **N & B AUTO SALES L.L.C.** | : | |
| **and** | : | |
| **CONNEX CREDIT UNION, INC** | : | **FEBRUARY 14, 2018** |
| **Defendants** | : | |
| | : | |

## COMPLAINT

## I. INTRODUCTION

1.      This is an action brought by a consumer against an automobile dealership
for violation of the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.,* and for
breach of the implied warranty of merchantability under the Magnuson-Moss Warranty
Act ("MMWA"), 15 U.S.C. §§ 2301 *et seq.*  Plaintiff also asserts pendent state law
claims against the dealership for breach of express warranty and violations of the
Connecticut Retail Installment Sales Finance Act, Conn. Gen. Stat. § 36a-770 *et seq.*
("RISFA"), and the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat.
§§ 42-110 *et seq.*

## II. PARTIES

2.      Plaintiff, Roger Sheak ("Plaintiff"), is a consumer and natural person
residing in Bristol, Connecticut.

3.      Defendant, N & B Auto Sales L.L.C. ("N & B Auto"), is a Connecticut limited liability company that operates an automobile dealership in Waterbury, Connecticut.

4.      Defendant, Connex Credit Union, Inc. ("Connex") is a Connecticut corporation with its principal place of business located in North Haven, Connecticut that accepts the assignment of retail installment contracts from Connecticut dealerships.

### III. JURISDICTION

5.      Jurisdiction in this court is proper pursuant to 15 U.S.C. § 1640(e). Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C. § 1367.

6.      This court has jurisdiction over N & B Auto and Connex because they are organized under the laws of the state of Connecticut and they regularly conduct business in this state.

7.      Venue in this court is proper because the Plaintiff resides in Connecticut, and the claims involve a transaction that occurred in Connecticut.

### IV. FACTUAL ALLEGATIONS

8.      Prior to October 23, 2017, N & B Auto advertised a 2013 Subaru Impreza Sedan WRX (the "Vehicle") for sale on its website for $24,900.  The advertisement did not list a dealer conveyance fee.

9.      On or about October 23, 2017, Plaintiff visited N & B Auto, and he agreed to purchase the Vehicle.

10.      The Vehicle had, prior to the time of sale to Plaintiff, received numerous modifications that rendered it unmerchantable.

11.      Plaintiff paid a down payment of $2,000.00 to N & B Auto.

12.    Plaintiff also traded in a 2005 Acura MDX and was given a gross trade-in allowance of $2,000.00.

13.    N & B Auto prepared a Purchase Order that listed a cash sale price of $24,900 and included an $850 charge for GAP and $2,988 for a service contract.

14.    The Purchase Order also included a charge of $599.00 for a dealer processing fee that had not been disclosed in the advertisement as required by Conn. Gen. Stat. § 14-62a, had not been disclosed by the salesman, and that had not otherwise been presented to Plaintiff until a purchase order was presented to him.

15.    Plaintiff financed a balance of $29,635.56 pursuant to a retail installment contract (the "Contract") that was assigned by N & B Auto to Connex.

16.    Plaintiff told N & B Auto's finance manager, Jeff, that he did not want the GAP addendum, but Jeff told Plaintiff he was required to purchase the GAP.

17.    GAP is a product that is sold only in financed transactions and that is not sold in cash transactions. It operates as an addendum to the contract and provides that, subject to the conditions of the GAP Agreement, in the event that the vehicle is stolen, or totaled, the holder of the Contract will accept the net insurance proceeds in satisfaction of the amount owed.

18.    The Purchase Order included a warranty that the Vehicle was guaranteed for 60 days or 3,000 miles and that the "retailer will pay 100% of the labor and 100% of the parts for the covered systems which render the vehicle mechanically operational and sound during the warranty period."

19.    N & B Auto also provided plaintiff with a Buyer's Guide that provided, "The dealer will pay 100% of the labor and 100% of the parts for the covered systems during

3

the warranty period" and "[t]he systems or parts covered above are guaranteed by a LIMITED WARRANTY for 60 days or 3,000 miles, whichever occurs first."

20.     The Contract provided for a trade in allowance and indicated that the payoff of the trade-in was $2,200, resulting in a net trade-in allowance of $-200.00 that was added to the amount financed.

21.     At the time of the transaction, the actual balance required to payoff the account was less than $2,000. On information and belief, N & B utilized a higher number for the trade-off, in part, so that it could delay making payment of the account balance on the trade and still have enough money remaining to cover additional interest.

22.     In fact, N & B did not pay off the trade until approximately November 28, 2017, more than a month following the sale, and the amount of the payoff at the time of that payment, with the additional accrued interest of approximately $30, was $2,014.68.

23.     Approximately one week after purchase, Plaintiff began experiencing problems with the Vehicle including problems with the clutch and shifting into gear and problems accelerating, and the check engine light illuminated.

24.     Plaintiff called N & B Auto and told them he was having problems with the Vehicle, and he told them he was taking the Vehicle to a facility to have the Vehicle tuned.

25.     Plaintiff had the Vehicle towed to a repair facility on or about November 27, 2017, and the facility told him that the Vehicle had a bad cylinder and a leak at the turbo inlet hose.

26.     Plaintiff called Jeff at N & B Auto and also spoke with N & B Auto's mechanic, Antae Pito, and told them the repair facility found a bad cylinder, and N & B Auto told Plaintiff to bring the car to N & B Auto for repairs.

27.     Plaintiff had the Vehicle towed to N & B Auto for repairs.

28.     N & B Auto subsequently brought the Vehicle to a Watertown Subaru for repairs, but Watertown Subaru said the Vehicle had been modified so extensively that it was unable to make the necessary repairs.

29.     The Vehicle remains in the possession of either N & B Auto or Watertown Subaru.

30.     Plaintiff notified N & B Auto of the problems with the Vehicle and gave N & B Auto a reasonable opportunity to make repairs, but N & B Auto has failed and refused to repair the Vehicle.

31.     On December 22, 2017, Plaintiff, by his attorney, sent written notice to N & B Auto and Connex that he revoked acceptance of the Vehicle, and he made a demand upon N & B Auto for his claims.

32.     Defendants have not refunded the down payment of $2,000.

33.     Connex is subject to these claims (other than the claims asserted under the Truth in Lending Act) and to Plaintiff's defenses under the Contract in accordance with the terms of the Contract and pursuant to Conn. Gen. Stat. § 52-57sg.

## V.     CAUSES OF ACTION

### A.  TRUTH IN LENDING ACT – N & B ONLY

34.     N & B Auto violated TILA by requiring that Plaintiff purchase GAP as a condition of financing the transaction and by failing to disclose the cost of the GAP

Addendum, which cost was imposed as a condition of financing and would not have been charged in a cash transaction, as a finance charge.

35.     N & B Auto also did not accurately disclose the annual percentage rate of interest. Specifically, the disclosed APR is 11.60%, but the actual APR that Plaintiff was charged when the cost of GAP is properly characterized as a finance charge is 12.7%.

36.     N & B Auto further violated TILA, because it did not accurately list the pay-off of Plaintiff's trade-in and did not credit him with the full net trade-in allowance, thereby rendering the itemization of the amount financed inaccurate.

37.     Additionally, the additional interest that was included as part of the overstated trade allowance was a finance charge, because this was imposed upon Plaintiff as an incident of the extension of credit in the form of continued interest payments on trade-in's balance after Plaintiff no longer owned the trade-in.

38.     N & B is liable to Plaintiff for his actual damages, plus statutory damages of $2,000, and a reasonable attorney's fees.

**B.  BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY CLAIM – BOTH DEFENDANTS**

39.     The vehicle is a consumer product as that term is defined in § 2301(1) of the Magnuson-Moss Warranty Act (15 U.S.C. §§ 2301-2312).

40.     A warranty that the Vehicle was in merchantable condition was implied by the contract by operation of Conn. Gen. Stat. § 42a-2-314.

41.     Prestige breached the implied warranty of merchantability, Conn. Gen. Stat. § 42a-2-314, because the Vehicle would not pass in trade without objection, was not fit for the purposes that motor vehicles are ordinarily used, or both.

42.     Additionally, the Vehicle was not in merchantable condition because it had modifications made prior to Plaintiff's purchase that were so extensive that the Vehicle could not be repaired, and the estimated cost to restore the Vehicle to its proper condition approaches or exceeds its value.

43.     N & B Auto was given a reasonable opportunity to cure the breach of the implied warranty of merchantability.

44.     It is not possible for N & B Auto to cure the breach of implied warranty of merchantability.

45.     N & B Auto's breaches of the implied warranty of merchantability were tortious in nature, in bad faith, were wanton and malicious, outrageous, and were undertaken with bad motive and with a reckless indifference to the Plaintiff's interests and the injury that he sustained.

46.     N & B Auto and Connex are liable to Plaintiff for his damages, including common law punitive damages, and attorney' s fees and costs under Article 2 of the Uniform Commercial Code and under  MMWA.

47.     Plaintiff is also entitled to an order that he validly and effectively revoked acceptance of the Vehicle pursuant to Conn. Gen. Stat. § 42a-2-608.

### C.  BREACH OF EXPRESS WRITTEN WARRANTY CLAIM

48.     The Vehicle was sold to Plaintiff with a warranty that the Vehicle would be mechanically operational and sound for the lesser of 60 days or 3,000 miles, and N & B Auto's 60 day or 3,000 mile warranty constituted an express warranty under Conn. Gen. Stat. § 42a-2-313.

49.     Additionally, N & B Auto's representations in the Purchase Order that the Vehicle was guaranteed for 60 days or 3,000 miles, and that it would cover the cost of all necessary parts and labor during the warranty was an affirmation of fact or promise relating to the Vehicle that became part of the basis of the bargain and created express warranties pursuant to Conn. Gen. Stat. § 42a-2-313(a).

50.     The Vehicle is a consumer product as that term is defined in 15 U.S.C. § 2301(1) of the Magnuson-Moss Warranty Act ("MMWA"), and N & B Auto's warranty that the Vehicle was guaranteed for 60 day or 3,000 miles also constituted a written warranty within the meaning of the MMWA, 15 U.S.C. § 2301(6)(a).

51.     N & B Auto breached its express and written warranties in that it failed to make the repairs in accordance with the written warranty despite having been provided with a reasonable opportunity to do so within the 60 days, 3,000 mile warranty period.

52.     For its breaches of warranty, N & B Auto is liable to Plaintiff for his damages pursuant to Conn. Gen. Stat. § 42a-2-714(3) plus attorney's fees and costs pursuant to 15 U.S.C. § 2310(d).

53.     N & B Auto's breaches of warranty were tortious in nature and in bad faith and were made with a willful disregard for Plaintiff's rights and the injuries he sustained, and it is liable for common law punitive damages.

54.     N & B Auto and Connex are liable to Plaintiff for his damages, including common law punitive damages, and attorney' s fees and costs under Article 2 of the Uniform Commercial Code and under MMWA.

55.     Plaintiff is also entitled to an order that he validly and effectively revoked acceptance of the Vehicle pursuant to Conn. Gen. Stat. § 42a-2-608.

## D.  RETAIL INSTALLMENT SALES FNANCE ACT
### (As an alternative to the Revocation of Acceptance Claim)

56.     The Contract failed to comply with RISFA because it did not disclose GAP as a finance charge and because it did not accurately state the payoff of the trade.

57.     N & B Auto and Connex have been restored to their pre-contractual position as nearly as possible because the Vehicle was returned to them.

58.     Plaintiff is entitled to a rescission of the Contract due to the violations of RISFA and a return of his down payment.

## E.  CONNECTICUT UNFAIR TRADE PRACTICES ACT

59.     N & B Auto's conduct as alleged above constituted unfair and deceptive acts in violation of CUTPA, as follows:

a.  Its violations of TILA and RISFA;

b.  It failed to fully disclose the extent to which the Vehicle had been modified.

c.  It "packed" the Contract with a VIN etch fee of $199, a GAP contract at a cost of $850, and a conveyance fee at a cost of $599, which Plaintiff did not request and did not want;

d.  It added a charge for GAP even though Plaintiff did not desire GAP and had not specifically requested GAP, in violation of Conn. Gen. Stat. § 14-62(b)(2);

e.  It sold Plaintiff a service contract at a cost of $2,998 that would not cover repairs and that had no value due to the extensive modifications of the Vehicle;

f.   It required Plaintiff to purchase a GAP addendum;

g.   It added a VIN etching fee of $199 to the price of the Vehicle without providing the Plaintiff with an option of whether to pay for the VIN etching, in violation of Conn. Gen. Stat. § 14-99h;

h.   It added a dealer conveyance fee that had not been disclosed in the manner required by Conn. Gen. Stat. § 14-62a and that had not been added to the price until the time that a purchase order was presented, a violation of Conn. Gen. Stat. § 14-62(b)(1);

i.   It failed to credit Plaintiff with the full net allowance for his trade and surreptitiously overcharged him by overstating the trade-in payoff amount;

j.   It delayed in paying off the trade-in, resulting in additional interest charges; and

k.   It advertised the Vehicle without including the disclosure required by Conn. Gen. Stat. § 14-62a regarding the dealer conveyance fee.

60.   N & B Auto's conduct, as aforesaid, was deceptive and unfair and in violation of CUTPA.

61.   Plaintiff has suffered an ascertainable loss in that he lost use of the Vehicle, he lost his $2,000 down payment, he paid the dealer conveyance fee which had not been properly disclosed, and he paid for a GAP addendum that he did not desire.

62.   N & B and Connex are liable to Plaintiff for actual damages, punitive damages, and reasonable costs and attorney's fees.

63.     Plaintiff also seeks a rescission of the Contract as an equitable remedy pursuant to CUTPA.

Wherefore, Plaintiff claims actual damages, statutory damages under TILA of $2,000, common law and statutory punitive damages, and attorney's fees and costs pursuant to TILA, MMWA, and CUTPA, and an order that he validly and effectively revoked his acceptance of the Vehicle, or alternatively an order of rescission of the contract and a return of his payments.

PLAINTIFF, ROGER SHEAK

By: /s/ Daniel S. Blinn
Daniel S. Blinn (ct02188)
Consumer Law Group, LLC
35 Cold Spring Rd. Suite 512
Rocky Hill, CT  06067
Tel. (860) 571-0408
Fax. (860) 571-7457
dblinn@consumerlawgroup.com